**Fred MOORE, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. KCD26062.

Missouri Court of Appeals,
Kansas City District.

Dec. 4, 1972.

J. Arnot Hill, Hill & McMullin, Kansas City, for appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, C. J., PRITCHARD and WASSERSTROM, JJ., and FRED E. SCHOENLAUB, Special Judge.

SHANGLER, Chief Judge.

This appeal is from a judgment denying the motion of the appellant under Supreme Court Rule 27.26, V.A.M.R., to set aside consecutive sentences of four years each entered upon his plea of guilty to the offenses of Burglary in the Second Degree and Stealing.

The motion alleged that the plea of guilty was involuntary because (1) it was induced by representations by his attorney that there was no possible defense against the charges (2) he was coerced to confess the crimes by threats of the arresting officers that otherwise, his parents, at whose home the fruits of the crimes were found, would be prosecuted and (3) he was induced by his attorney to believe that his plea of guilty would result in a sentence of four years only and the benefit of probable probation. Although not separately alleged, a theme which percurs the arguments of the movant on the three grounds asserted for relief is the ineffective performance of counsel.

Evidence was received on the motion, including the transcript of the prior proceedings at which the plea of guilty was entered, and the trial court, in a carefully expressed opinion, found the facts adversely to the movant on each ground and adjudged that the plea of guilty was voluntarily entered. The trial court also expressly found the movant's counsel had not only served him competently, but to his obvious advantage.

The movant was arrested and charged with burglary and stealing from a neighbor's premises when shoe prints were tracked next door to the basement of his mother's home, where he was living, and whence the illicit property was recovered. The movant argues that this episode of bumbling criminality is such obvious evidence of a dull mentality, more easily misled than one of normal understanding, as to raise serious doubt of the validity of his confession by plea of guilty. The record does not support this contention.

At the arraignment, the trial court determined the movant was indigent and appointed Mr. Donald Mason, a lawyer with more than fifteen years' experience at the Jackson County Bar, to represent him in the cause. Mr. Mason had served with the office of Prosecuting Attorney for Jackson County for eight years, the last two as

First Assistant Prosecuting Attorney. Since the termination of that service, he has practiced widely in the State and Federal criminal courts, both as appointed and privately retained counsel. Within days of appointment, Mr. Mason and the movant consulted concerning the offense. From the movant's account of the facts, soon confirmed from an examination of the prosecutor's file, it was obvious that the evidence was amassed against the movant. Mr. Mason sought the movant's concurrence as to whether he should attempt to negotiate a plea on his behalf or defend him by trial, which movant acknowledged his counsel was prepared to do. Movant responded: "I would like for you to see if you could work out a plea for a misdemeanor". Mr. Mason successfully negotiated a plea conformable to such terms and reported the event to the movant by this letter, received in evidence:

> "I have conferred with (the prosecutor) who is handling your case. He advises me that because of your age and the fact that you have had no prior difficulties with the law he would reduce the two felony charges that are pending against you, Burglary, Second Degree, and Stealing, to Stealing under Fifty Dollars, which is a Misdemeanor if you would plead guilty to the Misdemeanor charge. He further would make no recommendation for or against a parole. This would allow me to require a presentence investigation so the Court could consider placing you on probation and parole. Whether or not the Court would do so I cannot at this time adopt a position. I would suggest that you discuss this with your mother and sister and then call me. If you would like to, you, your mother and your sister could all come into my office and we could discuss this so that a decision could be made."

There was no response to this letter and Mr. Mason soon learned that the movant was back in jail charged with a new offense, Robbery in the First Degree. He promptly confirmed the details of that charge with the prosecutor's office, sought and received from the court appointment as counsel, and conferred with movant in the county jail, all within days of learning of the new charge. He advised the movant that, in the circumstances, it was doubtful the prosecutor would still agree to the misdemeanor reduction of the Burglary and Stealing charges. This presentiment was confirmed by the prosecutor who withdrew the offer to negotiate for a plea to a misdemeanor reduction of the Burglary and Stealing charges because of the seriousness of the subsequent charge and conclusiveness of the proof. (Movant had been arrested within twenty minutes and within three blocks of the robbery in possession of the property stolen.) On the day trial was scheduled for the Burglary and Stealing offenses, Mr. Mason informed the movant the option to plead to a misdemeanor was no longer available to him, that "the best the Prosecutor would recommend was four years on the Burglary and four years on the Stealing, and that if he pleaded to the Burglary Second and Stealing, knowing that the Prosecutor was going to make that recommendation to the Court, that the State would dismiss the Robbery charge". He informed the movant, also, of the range of possible punishment for each offense, that the Court could order the sentences to run either concurrently or consecutively, and that, in any event, the Court was not required to follow the recommendations of the prosecutor. Movant was told by Mr. Mason also that, although the Court had not indicated whether it would adopt the recommendation of the prosecutor as to the length of sentences, or whether they would be made to run consecutively or concurrently, movant should consider the possibility "the Court might make the sentences consecutive, that the Court may not feel too kindly toward him or be inclined to give him some consideration because of his age, by the fact that while he was out on bond on one felony charge, or actually two felony charges, he had gone out and com-

mitted another felony, with a gun". He asked movant to consider the possibility, admittedly remote, that because of his youth upon a trial the jury might acquit, or return a more lenient sentence than the four year terms the prosecutor offered to recommend in exchange for his plea. The movant insisted upon entering his plea of guilty that day, notwithstanding the suggestion of his counsel that he have the advice of his family before coming to a decision on the matter.

 A review of the proceedings at which the plea of guilty was entered discloses a complete record of those factors relevant to the determination of voluntariness. It also discloses that the trial court recognized that a plea of guilty "is an admission of all the elements of a formal charge (and) cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts". McCarthy v. United States, 394 U.S. 459, 466[6–9], 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418; Boykin v. Alabama, 395 U.S. 238, 243[5], 89 S.Ct. 1709, 23 L.Ed.2d 274. On the record, the judicial inquiry ranged methodically over the movant's physical and mental conditions, his comprehension of the consequences of his proffered plea, the range of punishment to which the plea would subject him, his right to trial by jury, the availability of his counsel for advice and the factual basis for the charges and his acknowledgement of their criminal commission. But before the trial judge formally accepted the plea, these inquiries and responses appear of record:

"Q. Has any promise or inducement of any kind been made to you—

"A. No, sir—

"Q. —to cause you to ask me to accept any plea of guilty?

"A. No, sir.

"Q. Has anyone undetaken to tell you what punishment this Court may impose if it accepts your plea of guilty?

"A. Yes, sir.

"Q. They have?

"A. Yes, sir.

"Q. Tell me about it.

"A. They said Stealing From The Person carries from two to five, and Burglary carries from two to ten.

"Q. Well, you didn't quite understand my question. You just told me what the range of penalty is. But nobody has told you what I am going to do, have they?

"A. No, sir.

"Q. All right. I didn't think so. Do you understand that you are entitled to a jury trial?

"A. Yes, sir.

"Q. And do you und.rstand that if tried by court and jury, if you were found not guilty you would be released, or if you were found guilty the punishment imposed by jury could be more, could be less, it might be the same thing that this Court may impose?

"A. Yes, sir.

"Q. And what are you charged with in this case?

"A. Burglary Second Degree and Stealing From The Person.

"Q. Burglary Second Degree and Stealing.

"MR. MASON: Fred, it is not Stealing from the Person; that is a separate charge. It is Burglary Second Degree and Stealing, which are companion type charges.

"THE COURT: That is correct.

"Q. (By the Court) Do you understand this?

"A. Yes, sir.

"Q. You have already told me your understanding of the penalty, the charge

of Stealing two to five years in the penitentiary, and the charge of Burglary two to ten years in the penitentiary.

"A. Yes, sir.

"Q. They could be made to run consecutively if you were given the maximum, or a total of fifteen years, you understand this?

"A. Yes, sir.

"Q. And knowing all these things, you are still asking that this Court accept your plea of guilty?

"A. Yes, sir.

"Q. All right.

"THE COURT: The Court will accept this defendant's plea of guilty."

At the conclusion of the court's inquiry, the litany was repeated between movant and his counsel and included this exchange:

"Q. And I didn't make any promises to you?

"A. No, sir.

"Q. None whatever?

"A. No, sir.

"Q. The only thing I promised you was if you wanted to go to trial I would give you the best defense I could possibly do and the best trial I could possibly do?

"A. Yes.

"Q. But it is your desire—and I didn't make any recommendation to you as to whether or not you should plead guilty or whether or not you should stand trial?

"A. No.

"Q. Isn't that correct?

"A. Yes.

"Q. And it was your decision and your decision alone to enter a plea of guilty?

"A. Yes, sir."

During the course of this inquiry by counsel, the movant also acknowledged that the Court could require the sentences on the Burglary and Stealing convictions to run consecutively, "one on top of the other". Then, before the court imposed sentence, Mr. Mason besought the court "to seriously consider making any sentence concurrent rather than consecutive". The court exercised its discretion, rather, in favor of consecutive four year sentences. The prosecutor thereupon dismissed the robbery charge.

■ These proceedings fully complied with the requirements of constitutional due process and Supreme Court Rule 25.04, V.A.M.R. that the record affirmatively show the court has determined by inquiry the voluntariness of a plea of guilty and that "the defendant understood the consequences of his plea". State v. Roach, Mo., 447 S.W.2d 553, 557[6]; Boykin v. Alabama, 395 U.S. 238, 244[5], 89 S.Ct. 1709, 23 L.Ed.2d 274. It is an established principle that if an accused is misled or induced to plead guilty by mistake, misapprehension, persuasion, or the holding out of a hope which proves to be false or ill-founded, his plea is not voluntary. State v. Good, Mo., 403 S.W.2d 594, 599[6,7]. The movant asserting such a ground for relief under Supreme Court Rule 27.26, V.A.M.R. has the burden of proof by a preponderance of the evidence. State v. Mountjoy, Mo., 420 S.W.2d 316, 326[7]. The court expressly found against the movant on this issue of a plea induced by a false hope of leniency and probation. Our review is limited to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous. Supreme Court Rule 27.26(j); Drew v. State, Mo., 436 S.W.2d 727, 730[10].

■ The argument movant makes on this appeal is not that he was deliberately

induced by counsel to a forlorn hope of concurrent sentences and probation, but that movant was not of an intelligence mature enough to understand the normal meaning of words and was thus easily misled to such a false expectation. As it is expressed in his brief: "The conversations between Mr. Mason and his client would probably convince a mature person that there was no hope of a parole. But appellant was not mature".[1] The evidence dispells such a contention. At the time of the plea, movant was eighteen years of age and a sophomore in high school. Assuming that this is some evidence of scholastic retardation, as movant argues, it is hardly proof of a susceptibility to misdirection. As the trial court noted, movant's responses upon his plea of guilty demonstrated a full understanding of the nature of the proceedings and the consequences of his plea. Movant alertly, accurately and without hesitation, expressed to the court his understanding of the range of punishment to which his plea could subject him. Also, he repeatedly affirmed in an understanding manner that he had not been induced to plead guilty by any expectation of leniency, that the court was not bound to accept any recommendation with the respect to the amount and manner of punishment and, specifically, that the court could impose either consecutive or concurrent sentences.

■ Movant's subjective conviction that he would receive four year concurrent sentences and probation upon his plea of guilty "[is] to be viewed in the light of the reasonableness of the claimed belief". Barylski v. State, Mo., 473 S.W.2d 399, 401. The subject of probation was introduced into the dealings between movant and his counsel in a letter which conveyed the prosecutor's concurrence to a reduction of the Burglary and Stealing charges to a misdemeanor offense. It expressed no promise of probation, rather, stated that the prosecutor "would make no recommendation for or against a parole". It went on to say that counsel would request a presentence investigation so that the court could then "consider placing you on probation (but) (w)hether or not the Court would do so (counsel) could not say". There is no evidence that this letter ever reached the movant. In his testimony, movant gave no indication that he had ever seen or been told of the letter. His only testimony on his claim of a plea of inducement was: "The onliest reason I pleaded guilty was because he said that I would get four years and favorable for a parole", which expression, we must conclude from his brief, was not intended to convey a literal representation made by counsel, but only movant's impression of the meaning of their discussions. By the time counsel was able to talk with movant about the plea bargain for a misdemeanor, movant had been charged with another serious felony, and a plea to a reduced charge was no longer a possibility. The only inducement made to the plea eventually entered was a four year sentence on each charge, to be served concurrently or consecutively as the court might ordain, and the dismissal of the robbery charge. This inducement was fulfilled.

■ On this record, the finding of the trial court that the promises asserted by the movant had not, in fact, been made amounts to a determination that there was no reasonable basis for what the movant now asserts to have been his belief at the time of the plea. Barylski v. State, Mo., 473 S.W.2d 399, 401. There is also decisive support in the record for the trial court's finding that counsel discharged his professional responsibilities to movant with the utmost skill and loyalty.

The judgment is affirmed.

All concur.

---

1. We do not understand this to be an assertion that the movant lacked "capacity to understand the proceedings against him or assist in his own defense" which would, of course, preclude his conviction so long as such an incapacity endured. Section 552.020(1), V.A.M.S.